# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**Bryan Clifton Curtis**                                                                                    **Plaintiff**

v.                                    No. 4:14-CV00627 SWW-JTR

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                         **Defendant**

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for United States District Judge Susan Webber Wright. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition.**

Bryan Clifton Curtis seeks judicial review of the denial of his application for social security disability benefits.[3] Curtis claims he has been disabled since March 17, 2011. At that time, Curtis worked for Tyson Poultry; he worked there for a few years.[4] Curtis based disability problems with his neck — spondylosis, myelopathy, and a bulging disc at level C6 — pain and numbness in the left shoulder and hand, and arthritis in the left hand.[5] He says these problems led to the loss of his job and prevent him from doing other work.

**The Commissioner's decision**. After considering the application, the ALJ identified severe impairments: cervical spondylosis and myelopathy, disorder of the left shoulder and left hand, and substance abuse mood disorder in remission.[6] The ALJ determined that, despite these impairments, Curtis can do some unskilled sedentary work.[7] Because a vocational expert identified available unskilled sedentary

---

[3] SSA record at pp. 203 & 209 (applying on July 7, 2011 and alleging disability beginning March 17, 2011).

[4] *Id*. at pp. 235, 247, 253 & 264.

[5] *Id*. at p. 246.

[6] *Id*. at p. 34.

[7] *Id*. at p. 36.

work, the ALJ concluded that Curtis is not disabled and denied the application.[8]

After the Appeals Council denied review,[9] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[10] Curtis filed this case to challenge the decision.[11] This recommendation explains why the Court should reverse the decision and remand for further proceedings.

**Curtis's allegations**. Curtis argues that: (1) the ALJ failed to fully and fairly develop the record and use the psychiatric review technique; (2) the ALJ should have ordered IQ testing and an orthopedic exam; (3) the ALJ erred in his evaluation of his counselor's medical statement; and (4) substantial evidence does not support the decision.[12] Because Curtis's first argument has merit, the Court need not address the merits of his other alleged grounds for reversal.

**Applicable legal principles**. When reviewing a decision denying an application for disability benefits, the court must determine whether substantial

---

[8]*Id*. at pp. 43-44.

[9]*Id*. at p. 1.

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]Docket entry # 11.

evidence supports the decision and whether the ALJ made a legal error.[13] For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to show Curtis can do unskilled sedentary work and work exists that Curtis can do.[14]

**The ALJ's evaluation of Curtis's alleged mental impairment.**

Curtis argues that the ALJ should have considered his intellectual disability in the context of the psychiatric review technique. He relies on a diagnosis of mental retardation. He contends the ALJ did not properly analyze his mental impairment and failed to fairly develop the record because he did not order IQ testing.

A consulting physician included "mental retardation" as a primary diagnosis,[15] but a consulting psychologist estimated Curtis's intellectual functioning as low average.

Notably, the ALJ's decision reflects that he applied the regulatory psychiatric

---

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[14]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[15]SSA record at p. 513. The name of the consultative physician is not legible, and it is not clear what speciality the physician was.

review technique to analyze Curtis's alleged "substance abuse mood disorder," but did *not* apply it to Curtis's alleged mental retardation. The ALJ did not discuss the consultative report containing the mental retardation diagnosis until assessing Curtis's mental RFC, and then discounted it as being inconsistent with the remainder of the record.[16] According to Curtis, the ALJ should have applied the regulatory psychiatric review technique in the earlier steps of the review process in order to properly evaluate his intellectual disability and determine whether he met Listing 12.05 for mental retardation.

The Commissioner counters that the ALJ found that Curtis's mental retardation was not even a "medically determinable impairment," and thus it was not necessary for the ALJ "to classify it as a severe or not severe impairment or whether it met Listing 12.05."[17] However, the ALJ's decision reflects *no analysis* of whether or not mental retardation was a "medically determinable impairment," much less application of the psychiatric review technique in that analysis.

Social security regulations establish a "psychiatric review technique" that is used to evaluate the severity of mental impairments.[18] The technique is not a mere

---

[16]SSA record at pp. 41-42.

[17]Commissioner's Appeal Brief at p. 6.

[18]*See* 20 C.F.R. § 404.1520a. The technique is used to rate the degree of functional limitation resulting from mental impairments in four broad functional areas:

formality or technicality. The regulations expressly acknowledge that the technique aids the Commissioner in: (1) identifying the need for additional evidence to determine the severity of mental impairments; (2) the consideration and evaluation of functional consequences of mental impairments; and (3) the organization and presentation of the Commissioner's findings "in a clear, concise, and consistent manner."[19]

In light of an examining physician having diagnosed "mental retardation," and a consulting psychologist estimating that Curtis had intellectual functioning in the "low average" range, there was at least "credible evidence" of an intellectual disability. However, there is nothing to indicate whether the ALJ's evaluation of that evidence, or his Step 2 and Step 3 findings, were made in the context of the special review technique.[20] *See* Social Security Ruling 96-8p (special review technique is used

---

(1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). This rating results in a determination as to whether mental impairments are severe. If severe mental impairments are present, then the next step involves a determination whether the severe mental impairments are equivalent to a listed mental disorder; this is done by "comparing the medical findings about [the] impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder." 20 C.F.R. § 404.1520a(d)(2). If a listing is not met then the RFC is assessed. 20 C.F.R. § 404.1520a(d)(3).

[19]See 20 C.F.R. § 404.1520a(a)(1)-(3).

[20]*See Cuthrell v. Astrue*, 702 F.3d 1114 (2013) (reversing for the ALJ's failure to apply the psychiatric review technique to the claimant's mental impairment —

to steps 2 and 3 of the sequential evaluation process).

**Conclusion and Recommended Disposition**

Because substantial evidence does not support the ALJ's listing analysis or mental RFC determination, the decision should be reversed. On remand, the ALJ should apply the special review technique, with assistance from a medical expert and IQ testing if necessary, and document the application of the technique as set forth in the regulations. The ALJ should also carefully update the medical record and ensure that he obtains and considers all of the medical evidence to support his RFC assessment.

Accordingly, the Court recommends that the Commissioner's decision be reversed and that this matter be remanded to the Commissioner for further proceedings pursuant to "sentence four," within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

---

noting that the failure is only harmless error where "there is no credible evidence of a mental impairment").


Dated this 20th day of January, 2016.

_____
UNITED STATES MAGISTRATE JUDGE